## ELEANOR CURRENCE ET AL. *vs.* MADISON DANIELS.

### July Term, 1872.

1. A legatee is compellable to sue the personal representative of the testator for satisfaction of his legacy; and in such suit he cannot ordinarily make a debtor to the estate a party, because there is no privity between the legatee and the debtor. But there may be special cases where the debtor may be made a party.

2. The bill in this case alleges that the testator in his lifetime advanced to M., one of his sons, a certain sum which was separate and independent of the share which the said M. was to receive as one of the heirs; and that there was an agreement between the testator and M. that the latter should pay such person or persons as the testator should direct, by will or otherwise, the certain sum; and that the testator, by the eighth clause of his will, " devised and bequeathed " to the plaintiffs the certain sum. On demurrer it is HELD:

   That the allegations, if true, indicate not only collateral circumstances sufficient, but also such special case as to justify the making of M. a party to the bill; because holding in his own hands the special funds, specifically bequeathed to the plaintiffs, he could, under those circumstances, be a trustee for the use and benefit of the plaintiffs. For that reason, and to prevent a multiplicity of suits, the demurrer was justly overruled

3. The allegations of the bill are not sustained, it appearing by the clause under which the bequest is claimed that the testator acknowledged that the certain sums so claimed were an absolute gift to M., in the lifetime of the former, without limitation, condition or circumstance. Nor does the proof sustain the allegation as to the agreement.

Suit in chancery in circuit court of Randolph county, commenced by summons issued 19th of June, 1866, in the names of Eleanor Currence and Mary Land, as plaintiffs, against Madison Daniels, defendant.

The bill filed at August rules following alleged that on the 1st of May, 1858, William Daniels made his will, which, with a codicil thereto, dated the 22d of the same month, was admitted to probate on the 25th of July, 1859, in the county

court of Randolph county, the said William Daniels having in the meantime died, possessed of a large estate, real and personal, which was disposed of by his said will; that by the eighth clause of the will the testator had given to his son, Madison Daniels, certain personal property and two hundred and fifty acres of land in Randolph county, and by the same clause gave to the plaintiffs one thousand dollars, equally to be divided between them, to be paid by the said Madison Daniels; and they claim that it was the testator's intention to charge said legacy to them upon the land given to said Madison, and that, whether a charge or not, it was a legacy recoverable from the said Madison, and accordingly pray a decree against the said Madison for the sale of the land to raise the amount of said legacy; or, if the court should be of opinion that the legacy was not a charge upon the land, for a personal decree against the said Madison for the amount, and for general relief.

The will of the said William Daniels is exhibited as part of the bill. The eighth clause thereof is in the following words:

"Eighth. I have heretofore given my son, Madison Daniels, three valuable horses, a saddle, bed, and good furniture, one hundred and fifty-five dollars in money, paid over by Samuel Morrison, and two hundred and fifty acres of land, which I consider his full share of my estate, and one thousand dollars more than his share, which said one thousand dollars due me by the said Madison Daniels I will to my daughters, Ellen Currence and Mary Land. If my said daughters should not be able to recover said one thousand dollars from said Madison, they are not to come on any other of my estate for the same."

At September rules, 1866, the defendant appeared and demurred generally to the bill, and the case was set for argument on such demurrer.

At May term, 1867, the cause was remanded to rules for further proceedings, on motion of the plaintiffs.

At January rules, 1868, the plaintiffs filed an amended bill, making quite a new and different case. After alleging that their respective husbands, whose names were given, were dead, and the making of the will and codicil of the said Wil-

liam Daniels, and the probate of the same after his death, they represent that by his said will one Elmore Daniels was named as executor, and that he having refused to act as such, one John N. Hughes was duly appointed administrator with the will annexed, and that he having died after his qualifification, John N. Phares, sheriff of Randolph county, was appointed administrator *de bonis non* with the said will annexed. They then proceed to allege that the said William Daniels, in his life, had advanced to his son Madison the sum of one thousand dollars over and above the share which the said Madison was to receive as one of the heirs, and that it was agreed between the testator and the said Madison that the latter should pay said sum to such person or persons as the testator should, by will or otherwise, direct ; and that the testator, by his will, had appointed the same to be paid to the plaintiffs, but that neither the said Madison nor any of the personal representatives of the testator had paid the same to them, nor had the said Madison paid the same to either administrator ; that the said Madison refused to pay the same to them, and that the personal representatives of the said William Daniels neglected and refused to institute proceedings at law against said Madison to enforce payment thereof. The bill made Madison Daniels and Phares, the committee administrator *de bonis non*, parties defendants, and prayed for the sale of the two hundred and fifty acres of land given to Madison Daniels by his father, in his lifetime, to raise the amount claimed as a legacy to plaintiffs under the will, and for general relief.

With this amended bill a deed is exhibited from William Daniels to Madison Daniels for two hundred acres of land in Randolph county, described by metes and bounds bearing date on the 31st day of January, 1857, and admitted to record on the same day. This deed purports to be in consideration of natural love and affection, and of one dollar in hand paid.

Another deed is filed from the said William Daniels to the said Madison for fifty-nine acres of land on Files Creek, in Randolph county, also described by metes and bounds, bearing date on the 21st day of June, 1848, and admitted to record on the same day. This deed purports to be in consideration of the sum of one hundred dollars in hand paid.

At February rules, 1868, the defendant, Madison Daniels, demurred generally to the amended bill, and at the August term following, this demurrer, on argument, was overruled and the cause sent to rules.

At the November term, 1868, Madison Daniels filed his answer. He admits that the plaintiffs are his sisters and that their husbands were dead. He also admits the will of their father as exhibited with the bill. He averts to the eighth clause of the will and alleges that nothing was given to him thereby, the terms of the clause merely expressing what was the fact, that the subjects therein mentioned had been theretofore given by the testator to the respondent, and that he then thought they amounted in value to one thousand dollars more than his share of the estate. He alleges that the deed of his father for the two hundred acres of land, made more than a year before the date of the will, requires nothing to be paid by him; that when he made his will his father had become old and childish, and for some cause was offended with him, and that for this reason he had desired by his will to take from him what he had previously given him and give it to the other children. He denies that there was any agreement between him and his father to pay the plaintiffs, or either of them, any sum whatever, and he averts to the fact that the testator did not intimate in his will that there was any such agreement. He insists that the devise to the plaintiffs was an afterthought entirely.

The depositions of sundry witnesses on each side were taken and filed in the cause.

Jonathan Daniels, a brother of the plaintiffs and of the defendant Madison, swears to a conversation which he says took place not thirty, but twenty-five years previously, or it might be a little more or less, between William Daniels and the witness, in presence of Madison Daniels, in which William Daniels said that Madison was to have the Morrison land and the Brooks land and two big horses, and pay the girls (the plaintiffs) one thousand dollars at the old man's death. He also swears to a subsequent conversation between himself and Madison, in which he says Madison stated that he was to pay the girls one thousand dollars at the death of the old man (his father.) He was not on friendly terms with Madison.

Jacob Daniels, another brother, and who lived for forty years close by his father and his brother Madison, proves that what he got from the old man was worth from a thousand to twelve hundred dollars more than the shares of the other children.

David Lilly swears to a conversation which he says he had with Madison about the time of the death of William Daniels, in 1858, (thirteen years and upwards before giving his deposition,) in which he says Madison stated that he was to to pay five hundred dollars to Mary Land and the like sum to Mrs. Currence, on account of what he had got from his father. The witness stated that he had had a fight with Madison Daniels, and had brought a suit against him in 1860, and that their relations had not been friendly since.

John B. Earle proves that the relations between Madison Daniels and Lilly seemed friendly ; that in 1860 they had a fight.

Allison Daniels, a witness for defendant, proves that in 1858 an effort was made by William Daniels and Madison Daniels to have a settlement; that they could not agree; that he then interposed and requested that the old man would give him the note he held on Madison and that the latter would give him the money he had ; that Madison gave him the money and he gave it to the old man, and that the old man then gave him Madison's note and he gave it to Madison; and that on the same day they all got on their horses and went to town to execute the deed to Madison ; that in the conversation between them on that day nothing was said about Madison's paying anything to Mrs. Currence or Mrs. Land. He proves that the " Brooks' Place " (the sixty acres conveyed by Stalnaker) was purchased by William Daniels and Madison Daniels jointly some thirty years previously, and that Madison was to have the land and to pay for it.

Adam Crawford proves that William Daniels told him the Brooks land was bought for Madison, and that he must pay for it; and that Madison did pay for it. This was about thirty years previously.

John B. Morrison proves that Jonathan Daniels and Madison Daniels were not on friendly terms.

David Goff proves that as attorney for the Stalnakers he collected the last payment of five hundred dollars for the Brooks land off Madison Daniels.

Allison Daniels proves that Madison Daniels and his father were not on friendly terms after the deed for the two hundred acres made by the old man in 1857. He heard the old man make threats towards Madison.

The deed from William Daniels to Madison Daniels, dated 21st of June, 1848, for the fifty-nine acres called the "Brooks' land," the deed from same to same dated 31st of June, 1857, for the two hundred acres, and a deed from William Daniels to Samuel Morrison, dated 8th of June, 1849, are filed as evidence in the cause.

Upon this state of pleadings and proofs the case came on to be heard on the 30th of April, 1870, when the court pronounced its decree against Madison Daniels, personally, in favor of Mrs. Currence and Mrs. Land, for the sum of five hundred dollars each, with interest thereon from the 19th of June, 1866, until paid, and costs of suit.

From this' decree the defendant, Madison Daniels, appeals to this court for error in the same to be corrected.

*Lee*, in support of said appeal, contended:

1. That the plaintiffs were not entitled to call the appellant in question in any court touching the matter alleged in the bill and amended bill, and the demurrers to the same should have been sustained. There was no privity between the plaintiffs and Madison Daniels. They claimed as legatees, and that the defendant was indebted to the estate of their testator. If so indebted he was liable to be sued by the executor or administrator only. His failure to sue could confer no right upon the plaintiffs to maintain a suit in their names, no fraud or collusion being alleged between the defendants. The remedy was against the administrator for neglect of duty or breach of his trust. Plaintiff must show a proper title to institute the suit. If he fail to do so a demurrer will lie, and a legatee cannot sue a debtor of the estate. Mitford's Pleadings, 155, 156, 157, 158,. Coop. Eq. Pl., 160, 169, 171 to 176. Sto. Eq. Pl., §§ 227, 260, 261, 262, 503, 504, 508, 514. *Brown, sword* vs. *Edwards*, 2 Ves., 247; *Parker* vs. *Fearnley*, 2 Sim. and

Stu., 592 ; *Alsager* vs. *Johnson,* 4 Ves., 217 ; *Burroughs* vs. *Elton,* 11 Ves., 29 ; *Long* vs. *Majestre,* 1 John., ch. 305.  See especially Sto. Eq. Pl., §§ 227, 262, 514, for authority directly in point.

The agreement to pay the one thousand dollars alleged in the bill is not established by the proofs.  It is expressly and positively denied in the answer of Madison Daniels.  The only evidence tending to prove it is that of Jonathan Daniels and Lilly.  Their evidence comes under circumstances entitling it to but little weight.  They undertake to speak of what they heard Madison Daniels say from thirteen to twenty-five years before their depositions were taken.  Such evidence is confessedly the weakest of all kinds of testimony.  It is to be received with the greatest caution.  *Simon's Case,* 6 Carr & Payne, 541, per Alderson, B.; *Earle* vs. *Picken,* 5 Carr & Payne, 542, per Parke, J.; 4 Black. Comm., 357.  See the reasons for distrusting this kind of evidence given by Professor Greenleaf.  1 Greenl. Ev., § 200.  Moreover, both these witnesses were on unfriendly terms with Madison Daniels and were disqualified from speaking impartially.  The pretended agreement is expressly disproved by Madison Daniels, whose testimony as a witness is taken in the case, and is also disproved by all the attending circumstances.  The "Brook's land" of fifty-nine acres is distinctly proven to have been paid for by Madison Daniels.  In the deed for the two hundred acres made by William Daniels there is no reservation of any purchase money to be paid to anybody and nothing said about any being unpaid, and this deed was not made until after the settlement brought about by the intervention of Allison Daniels between William Daniels and Madison.  He proves that the former held a note on the latter, which was delivered up on payment of the money by the latter, and that the parties then got on their horses and went to town to execute the deed ; and nothing was said about anything to be paid to any other person.  William Daniels, in his will, does not intimate that Madison had agreed to pay any sum of money to Mrs. Currence or Mrs. Land.  All that can be deduced from it is that the testator considered what he had previously given Madison Daniels was more than his share of his estate by one thousand dollars, and therefore he chose to consider that sum as a debt due him

from Madison Daniels, and to divide it equally between his two daughters. But apparently conscious that he had no valid legal claim against Madison, he takes good care to add, that if his daughters should not be able to recover the one thousand dollars from Madison, they are not to come upon his other estate for the same. All the circumstances of the case are utterly irreconcilable with the pretensions now put forth by the plaintiffs, and sought to be bolstered up by the unreliable and fallacious testimony of two unfriendly witnesses as to vague and loose statements made by Madison Daniels nearly a quarter of a century before.

3. The allegation of the bill is that William Daniels in his lifetime had advanced to Madison Daniels the sum of one thousand dollars , which sum " was separate and independent of the share which the said Daniels was to receive as one of the heirs of the said testator." This allegation is not sustained by the evidence, but on the contrary is clearly disproved.

4. The bill alleges that Madison Daniels was to pay the one thousand dollars to such person or persons as the testator should, by will or otherwise, direct. The evidence of the two witnesses relied on is that Madison said he was to pay it to Mrs. Currence and Mrs. Land.

5. The pretended agreement is void under the statute of fraud. It was not to be performed until after the death of the old man. This did not occur until more than a year after the deed was made—the latest period at which the agreement could have been made—and there was no note or memorandum of the agreement in writing and signed by Madison Daniels or his agent. Code of Virginia, ch. 143, § 1, p. 627.

Moore, J. It is true, a legatee is compellable to sue the personal representative of the testator for satisfaction of his legacy; and in such suit he cannot, ordinarily, make a debtor to the estate a party, because there is no privity between the legatee and debtor. But there may be special cases where the debtor may be made a party. Story's Eq. Plead., §§ 262, 514. The amended bill in this case alleges that the testator in his lifetime " advanced to Madison Daniels, one of his sons, the sum of one thousand dollars, which said sum was

separate and independent of the share which the said Daniels was to receive as one of the heirs of the said testator;" and "that there was an agreement between the said testator and the said Madison, that the said Madison should pay to such person or persons as the said testator should, by will or otherwise, direct, the said sum of one thousand dollars;" and that the testator, by the eighth clause of his will, "*devised and bequeathed*" to the plaintiffs the said sum of one thousand dollars, &c. If the allegations be true, it seems to me they indicate not only collateral circumstances sufficient but also such a special case as to justify the making of Madison Daniels a party, because holding in his own hands the special funds specifically bequeathed to the plaintiffs, he would under those circumstances be a trustee holding the legacy for the use and benefit of the plaintiffs. For that reason, and to prevent the multiplicity of suits, I think the court did right in overruling the demurrer.

But the allegations of the bill are not sustained. The said eighth clause of the will is a positive declaration from the testator of a gift of personalty made in his lifetime to the said Madison, without limitation or *condition*, and the land is conveyed by deed in fee ; no limitation, no condition, no encumbrance whatever appears in the deed. The property had gone absolutely from the testator, it was an executed gift in his lifetime, and he could not dispose of it by his will, because it was no longer his property but Madison's. The proof does not sustain the allegation as to the agreement. It seems to me the decree is erroneous, and should be reversed, and the bills dismissed with costs.

The other judges concurred.

DECREE REVERSED.